## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MAYO INOUE A/K/A MAIO INOUE, TAYLOR PULBROOK, ALYSSA SCHAFFER, LAURA VINCENZI, AND ANDREA CIAMPI, individually and on behalf of all others similarly situated, | Case No. 1:25-cv-01016 <br> Hon. Edmond E. Chang |
| *Plaintiffs,* | |
| v. | |
| FTD, LLC, | |
| *Defendant.* | |

## FTD, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION TO COMPEL ARBITRATION AND TO STAY THESE PROCEEDINGS

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................... 1

FACTUAL BACKGROUND ........................................................................ 2

I.   FTD'S WEBSITES ARE GOVERNED BY TERMS AND CONDITIONS
     CONTAINING A MANDATORY ARBITRATION CLAUSE ........................................ 2

II.  THE NAMED PLAINTIFFS PLACED MANY ORDERS ON FTD'S
     WEBSITES AND RECEIVED CONSPICUOUS DISCLOSURE OF THE
     TERMS AND CONDITIONS EACH TIME ..................................................... 3

     A.   Plaintiff Inoue ..................................................................... 4

     B.   Plaintiff Pulbrook .................................................................. 5

     C.   Plaintiff Schaffer .................................................................. 5

     D.   Plaintiff Vincenzi .................................................................. 6

     E.   Plaintiff Ciampi .................................................................... 7

ARGUMENT ..................................................................................... 8

I.   FEDERAL LAW AND POLICY STRONGLY FAVOR ARBITRATION ..................................... 8

II.  THE ARBITRATION AGREEMENT IS VALID AND ENFORCEABLE ................................... 9

     A.   Plaintiffs Schaffer and Ciampi Explicitly Agreed to Be Bound by the
          Terms and Conditions and the Arbitration Clause Therein ................................. 10

     B.   Plaintiffs Inoue, Pulbrook, and Vincenzi Also Agreed to Be Bound by the
          Terms and Conditions That Contained the Arbitration Clause ............................. 12

III. THE ARBITRATOR SHOULD DECIDE WHETHER PLAINTIFFS' CLAIMS
     FALL WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT ..................................... 14

IV.  THE COURT SHOULD STAY THESE PROCEEDINGS ............................................... 15

CONCLUSION ................................................................................... 15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ali* v. *Vehi-Ship, LLC,*
  No. 17 CV 02688, 2017 WL 5890876 (N.D. Ill. Nov. 27, 2017) ...........................................14

*Angelilli* v. *Activision Blizzard, Inc.,*
  No. 23-CV-16566, 2025 WL 524276 (N.D. Ill. Feb. 18, 2025) ............................................15

*AT&T Mobility LLC* v. *Concepcion,*
  563 U.S. 333 (2011) ...................................................................................................................15

*Dean Witter Reynolds, Inc.* v. *Byrd,*
  470 U.S. 213 (1985) .....................................................................................................................8

*Domer* v. *Menard, Inc.,*
  116 F.4th 686 (7th Cir. 2024) ...................................................................................9, 10, 11, 12

*Fischer* v. *Instant Checkmate LLC,*
  No. 19 C 4892, 2021 WL 3033586 (N.D. Ill. July 19, 2021) .................................................9

*Gaines* v. *Ciox Health, LLC,*
  No. 5-23-0565, 2024 WL 4023817 (Ill. App. Ct. Sept. 3, 2024)............................................9

*Gore* v. *Alltel Commc'n., LLC,*
  666 F.3d 1027 (7th Cir. 2012) ....................................................................................................8

*Gorny* v. *Wayfair Inc.,*
  No. 18 C 8259, 2019 WL 2409595 (N.D. Ill. June 7, 2019) .................................................11

*Hamera* v. *Best Buy Co., Inc.,*
  No. 24 C 11909, 2025 WL 1823994 (N.D. Ill. July 2, 2025) ................................................11

*Henry Schein, Inc.* v. *Archer & White Sales, Inc.,*
  586 U.S. 63 (2019).....................................................................................................................14

*Hewitt* v. *Capital One, N.A.,*
  No. 1:24-CV-04839, 2025 WL 964086 (N.D. Ill. Mar. 31, 2025) (Chang, J.)........................9

*Hubbert* v. *Dell Corp.,*
  359 Ill. App. 3d 976 (Ill. App. Ct. 2005) ...............................................................................12

*Kass* v. *PayPal Inc.,*
  75 F.4th 693 (7th Cir. 2023) .......................................................................................................9

*Oberstein* v. *Live Nation Ent., Inc.*,
    60 F.4th 505 (9th Cir. 2023) ................................................................13

*Selden* v. *Airbnb, Inc.*,
    No. 16-CV-00933, 2016 WL 6476934 (D.D.C. Nov. 1, 2016), *aff'd*, 4 F.4th
    148 (D.C. Cir. 2021) ...............................................................................13

*Sgouros* v. *TransUnion Corp.*,
    817 F.3d 1029 (7th Cir. 2016) ....................................................9, 13, 14

*Taylor* v. *Samsung Elecs. Am.*,
    16 C 50313, 2018 WL 3921145 (N.D. Ill. Aug. 16, 2018) .....................9

*Volkswagen Of Am., Inc.* v. *Sud's Of Peoria, Inc.*,
    474 F.3d 966 (7th Cir. 2007) ................................................................15

*E.E.O.C.* v. *Waffle House, Inc.*,
    534 U.S. 279 (2002) ..............................................................................15

*Wal-Mart Stores, Inc.* v. *Helferich Pat. Licensing, LLC*,
    51 F. Supp. 3d 713 (N.D. Ill. 2014) ........................................................8

*Wallrich* v. *Samsung Elecs. Am., Inc.*,
    106 F.4th 609 (7th Cir. 2024) ...............................................................15

*Wilcosky* v. *Amazon.com, Inc.*,
    517 F. Supp. 3d 751 (N.D. Ill. 2021) ....................................................11

**Statutes**

Federal Arbitration Act, 9 U.S.C. §§ 2–4 ...........................................1, 8, 15

Defendant FTD, LLC ("FTD") submits this memorandum in support of its motion to compel arbitration and to stay this action in accordance with the parties' agreements and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2–4. Plaintiffs oppose this motion.

## PRELIMINARY STATEMENT

Plaintiffs Mayo Inoue, Taylor Pulbrook, Alyssa Schaffer, Laura Vincenzi, and Andrea Ciampi (collectively, "Plaintiffs") bring this putative nationwide class action alleging that FTD violated consumer protection laws in all 50 states by imposing delivery fees that Plaintiffs characterize as "a hidden cost that surprises the consumer at the very last step of the check-out process" on the two websites FTD operates, FTD.com and Proflowers.com (collectively, the "Websites" or "FTD"). Consolidated First Amended Class Action Complaint ("FAC") ¶¶ 2, 84. FTD disputes all of Plaintiffs' allegations, but the Court need not address the merits of the allegations because Plaintiffs' claims must be resolved through individual arbitrations.

All five Plaintiffs agreed to be bound by the Terms and Conditions (the "T&Cs") governing their transactions on FTD.com and Proflowers.com, which provides that "all disputes, controversies and claims related to . . . any order for any product or services from FTD . . . shall be finally and exclusively resolved by confidential binding arbitration . . . ," and that Plaintiffs waived any right to class arbitrations and class actions. Declaration of Aimee Baldassaro ("Decl.") Ex. 6 at 3. Plaintiffs Schaffer and Ciampi were explicitly informed that "[b]y clicking Place Your Order" they agreed to the websites' "Terms of Use," before they placed their respective orders in 2020 and 2022. When Plaintiffs Inoue, Pulbrook, and Vincenzi checked out their orders, the hyperlink to the T&Cs was conspicuously displayed at every step of the process—the hyperlink was located right beneath the action buttons they were required to click or order information they were prompted to review in order to complete their orders.

The Federal Arbitration Act ("FAA"), legal precedent, Plaintiffs' familiarity with

the websites, and the reality of online retail today, all compel the conclusion that Plaintiffs' claims must be referred to individual arbitration: Plaintiffs each entered into an arbitration agreement with FTD that is valid and enforceable under Illinois law; their claims fall squarely within the scope of the arbitration clause; and the FAA and Seventh Circuit law mandate that the Court must stay the entirety of this litigation pending arbitration of Plaintiffs' claims. Therefore, FTD respectfully requests that this Court issue an order compelling individual arbitration against all Plaintiffs and staying further proceedings.

## **FACTUAL BACKGROUND**

I. **FTD'S WEBSITES ARE GOVERNED BY TERMS AND CONDITIONS CONTAINING A MANDATORY ARBITRATION CLAUSE**

FTD is a floral wire service, retailer, and wholesaler. It is headquartered and has its principal place of business in Illinois. Decl. ¶ 3. FTD owns and operates FTD.com and Proflowers.com, which adopt similar website design and purchase flow process. FAC ¶¶ 40–41; Decl. ¶ 3. Both Websites are governed by the same T&Cs. Decl. ¶ 10.

When all five Plaintiffs placed their orders on both Websites over the last eight years, the T&Cs informed users of the Websites (including the Plaintiffs) that, "by accessing or using the FTD Services, you are bound by these Terms and any revisions" and that "[i]f, at any time, you choose not to accept the terms of these Terms, you should not access or use the FTD Services."[1] Decl. Ex. 6 at 1. "FTD Services" includes, among other things, products and services FTD provided through both Websites. *Id*.

The T&Cs begin with, in all capital letters and at the very top of the first page, a warning that "THESE TERMS AND CONDITIONS CONTAIN A BINDING ARBITRATION

---

[1] The wordings of the relevant provisions in the T&Cs were updated over the years but remained materially and substantively the same. For ease of discussion in this memorandum, unless otherwise noted, we refer to the version effective as of the commencement of this action.

CLAUSE AND CLASS ACTION WAIVER THAT IMPACT YOUR RIGHTS ABOUT HOW TO RESOLVE DISPUTES . . . ." *Id.*

The "Binding Arbitration/Class Waiver" clause in the T&Cs—which has remained in place and materially unchanged since 2018—provides that "all disputes, controversies and claims related to these Terms. . . (including the Privacy Policy, FTD Services and any order for any product or services from FTD) (each a 'Claim'), shall be finally and exclusively resolved by confidential binding arbitration . . . ." *Id.* at 3 (emphasis omitted). The clause further provides, in all-caps, that the "confidential binding arbitration shall be conducted before one neutral arbitrator from the American Arbitration Association ('AAA'), rather than in a court . . . . The arbitration will be governed by the AAA's Consumer Arbitration Rules . . . ." *Id.* (emphasis omitted). Pursuant to this clause, the user forfeits the "right to a trial by jury and to otherwise proceed in a lawsuit in state or federal court" and waives the right to "arbitrate[] on a class-action basis or to utilize class action procedures." *Id.*

The T&Cs are "governed by and construed in accordance with the laws of the State of Illinois without regard to . . . such State's conflicts-of-laws principles." *Id.* at 4.

## II. THE NAMED PLAINTIFFS PLACED MANY ORDERS ON FTD'S WEBSITES AND RECEIVED CONSPICUOUS DISCLOSURE OF THE TERMS AND CONDITIONS EACH TIME

As acknowledged in the FAC, Plaintiffs are a group of experienced customers of FTD's Websites. *See* FAC ¶¶ 117, 133, 148, 170, 186 (acknowledging that each Plaintiff has purchased on the Websites "on at least one occasion"). Indeed, over the last eight years, the five Plaintiffs have collectively placed over 10 orders on the Websites.[2] *See* Decl. Exs. 1–4.

---

[2] Discovery will show that all Plaintiffs had ample experience shopping for flowers and gifts on the Websites, including, for several of the Plaintiffs who placed over a dozen orders on the Websites.

Each time Plaintiffs placed an order on the Websites, they received conspicuous disclosure of the T&Cs.  Contrary to Plaintiffs' allegations that "consumers are never provided with Defendant's Terms of Service" and that "Defendant fails to hyperlink its Terms of Service on any of the mentioned screens shown to users," FAC ¶¶ 97–98, since at least 2018[3]—that is, within approximately the last eight years—the Websites have featured hyperlinks to the T&Cs during the checkout process and, for four years, contained additional language expressly stating that customers were agreeing to be bound by the T&Cs by placing orders.  *See* Decl. ¶¶ 14–15, 19–20, Exs. 11, 15.  These hyperlinks to the T&Cs were conveniently left out from Plaintiffs' incomplete screenshots of the checkout process that they attached to the FAC.  *See* FAC Ex. A.

A.    **Plaintiff Inoue**

As alleged in the FAC, Plaintiff Mayo Inoue purchased a flower arrangement on FTD.com on October 15, 2024.  FAC ¶ 118; Decl. Ex. 1.  In the last eight years, she also placed an order on Proflowers.com on May 10, 2018.  Decl. Ex. 1.

When Plaintiff Inoue placed her alleged order on FTD.com in 2024, a hyperlink to the T&Cs was present at every step of the Website's three-step checkout process, including delivery information, payment information, and order confirmation.  *See* Decl. ¶¶ 16–17, Ex. 13. At each step, the hyperlink was located right beneath the action button a customer would have to click in order to proceed to the next step, as shown in the example of the first step below.  Decl. Ex. 13.  The customer could view the full T&Cs by clicking on the link.  Decl. ¶ 16.

---

[3]    We are using the time period commencing in 2018 because for the purposes of this motion, Defendant has reviewed Plaintiffs' order histories since 2018.  Decl. Exs. 1–4.



### B.     Plaintiff Pulbrook

Although Plaintiff Taylor Pulbrook alleges she purchased a flower arrangement on FTD.com on January 24, 2025, FAC ¶¶ 134–35, FTD's record shows that she placed the order on January 27, 2025. Decl. Ex. 2. She also placed another order on FTD.com on July 26, 2022, within the last eight years. *Id.*

When Plaintiff Pulbrook placed her alleged order on FTD.com in January 2025, she encountered a hyperlink to the T&Cs at every step of the three-step checkout process, just as Plaintiff Inoue did above. Decl. ¶¶ 16–17, Ex. 13. When she placed the order on July 26, 2022, the checkout process was almost identical to that of her 2025 order, except that the T&Cs hyperlink was at the center of five, instead of six, widely spaced hyperlinks beneath the action button. Decl. ¶¶ 16–17, Ex. 12.



### C.     Plaintiff Schaffer

As alleged in the FAC, Plaintiff Alyssa Schaffer purchased a flower arrangement

on FTD.com on April 15, 2022.  FAC ¶¶ 149–50; Decl. Ex. 3.  She also placed another order on FTD.com on March 1, 2020, again, within the last eight years.  Decl. Ex. 3.

When Plaintiff Schaffer placed her order on FTD.com in March 2020, the Website expressly notified customers, immediately beneath the "Place Your Order" button, that "[b]y clicking Place Your Order, you agree to our Privacy Policy and Terms of Use," with the "Terms of Use" hyperlinked to the full text of the T&Cs.[4]  Decl. ¶¶ 14–15, Ex. 11.



### D.    Plaintiff Vincenzi

As alleged in the FAC, Plaintiff Laura Vincenzi purchased a flower arrangement on FTD.com on August 8, 2024, FAC ¶¶ 171–72; Decl. Ex. 4.  Plaintiff Vincenzi placed this order by accessing FTD.com on a mobile device.  *See* Decl. ¶ 18, Ex. 4.

When Plaintiff Vincenzi checked out on FTD.com through her mobile device, she would have gone through a similar process as those who shopped on a computer: First, after

---

[4]    When she placed her order in April 2022, she would have encountered a hyperlink to the T&Cs at every step of the checkout process just as Plaintiff Pulbrook did when she placed her 2022 order above.  Decl. ¶¶ 16–17, Ex. 12.

inputting the delivery information and before clicking the continue-to-payment button, she would have been able to review her order information, below which were hyperlinks to FTD's policies and terms, including the T&Cs. *See* Decl. ¶ 18, Ex. 14. When she proceeded to the payment information page, she was given another opportunity to review her order, including a breakdown of the total price and the delivery information. *See* Decl. ¶ 18, Ex. 14. The hyperlink to the T&Cs was again located below the delivery information. *See* Decl. ¶ 18, Ex. 14.

### E. Plaintiff Ciampi

As alleged in the FAC, Plaintiff Andrea Ciampi purchased a flower arrangement on Proflowers.com on May 6, 2024. FAC ¶¶ 187–88; Decl. Ex. 4. Within the last eight years, Ms. Ciampi also placed another three orders on Proflowers.com on February 8, 2018, May 22, 2022, and February 5, 2023. Decl. Ex. 4. In 2023, Ms. Ciampi created an account on Proflowers through Gmail sign-on. Decl. ¶ 9, Ex. 5.

When Plaintiff Ciampi placed her order in 2022 on Proflowers.com, both Websites expressly notified customers, immediately beneath the "Place Your Order" button, that "[b]y clicking Place Your Order, you agree to our Privacy Policy and Terms of Use," with the "Terms of Use" hyperlinked to the full text of the T&Cs.[5] Decl. ¶¶ 19–20, Ex. 15.

---

[5]    Plaintiff Ciampi also received disclosures of the T&Cs during her later interactions with the Website. When she placed her orders in 2023 and 2024, the checkout process and webpage interface design on Proflowers.com was substantially identical to that on FTD.com. At each of the three steps of checkout, the "Terms and Conditions" hyperlink—in black font on a light gray background—was located below the action button Plaintiff Ciampi clicked to proceed. Decl. ¶ 21, Ex. 16. When she created an account with Proflowers using the Gmail sign-on function in 2023, she was also expressly told, on each of the two webpages, that she could "review" or "see" Proflowers' "Terms of Service," with the "Terms of Service" hyperlinked and in contrasting blue color to the surrounding black text and white background. Decl. ¶ 22, Ex. 17.



## ARGUMENT

## I.     FEDERAL LAW AND POLICY STRONGLY FAVOR ARBITRATION

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that the district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc.* v. *Byrd*, 470 U.S. 213, 218 (1985); 9 U.S.C. §§ 3, 4. The Seventh Circuit looks to a "liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Gore* v. *Alltel Commc'n., LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (quoting *AT&T Mobility LLC* v. *Concepcion*, 563 U.S. 333, 339 (2011)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" under the FAA. *Wal-Mart Stores, Inc.* v. *Helferich Pat. Licensing, LLC*, 51 F. Supp. 3d 713, 717 (N.D. Ill. 2014) (quoting *Moses H. Cone Mem'l. Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

Under the FAA, courts will compel arbitration if "a party [can] show (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal

by the opposing party to proceed to arbitration." *Kass* v. *PayPal Inc.*, 75 F.4th 693, 700 (7th Cir. 2023). While "[t]he party seeking to compel arbitration has the burden of establishing an agreement to arbitrate," the resisting party "bears the burden of identifying a triable issue of fact on the purported arbitration agreement." *Hewitt* v. *Capital One, N.A.*, No. 1:24-CV-04839, 2025 WL 964086, at *4 (N.D. Ill. Mar. 31, 2025) (Chang, J.).

## II. THE ARBITRATION AGREEMENT IS VALID AND ENFORCEABLE

"Whether an agreement to arbitrate has been formed is governed by state-law principles of contract formation." *Domer* v. *Menard, Inc.*, 116 F.4th 686, 694 (7th Cir. 2024). Under Illinois law, for an online agreement, "the circumstances of the transaction must provide the offeree with reasonable notice that the terms of an agreement are being offered and that certain acts or conduct by the offeree will constitute acceptance of the offer." *Gaines* v. *Ciox Health, LLC*, No. 5-23-0565, 2024 WL 4023817, at *7 & n.5 (Ill. App. Ct. Sept. 3, 2024).

To determine the validity of an online agreement, courts inquire "whether the web pages presented to the consumer adequately communicate all the terms and conditions of the agreement, and whether the circumstances support the assumption that the purchaser receives reasonable notice of those terms." *Sgouros* v. *TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016). One who lacks actual knowledge of the terms may "nonetheless have constructive knowledge of those terms where the website provides clear and conspicuous notice of them." *Fischer* v. *Instant Checkmate LLC*, No. 19 C 4892, 2021 WL 3033586, at *5 (N.D. Ill. July 19, 2021) (citation omitted). A user need not have actually read the terms, for "as long as there was a reasonable opportunity for [him] to read the terms and reject them, he is bound by them." *Taylor* v. *Samsung Elecs. Am.*, 16 C 50313, 2018 WL 3921145, at *3 (N.D. Ill. Aug. 16, 2018) (citing *Boomer* v. *AT&T Corp.*, 309 F.3d 404, 415 (7th Cir. 2002)). For reasons detailed below, Plaintiffs each agreed to be bound by the T&Cs when they placed their orders on the Websites.

9

### A. Plaintiffs Schaffer and Ciampi Explicitly Agreed to Be Bound by the Terms and Conditions and the Arbitration Clause Therein

Whether a website has provided "reasonably conspicuous notice" of its terms to its user is a fact-intensive inquiry, for which the Seventh Circuit considers five factors: "(1) the simplicity of the screen; (2) the clarity of the disclosure; (3) the size and coloring of the disclosure's font; (4) the spatial placement of the hyperlink; and (5) the temporal relationship to the user's action." *Domer*, 116 F.4th at 695. No single factor is dispositive and the Court must conduct the inquiry "in light of the whole webpage." *Id.* (citation omitted). Having received "reasonably conspicuous notice" of an online agreement, a consumer must "take some action that unambiguously manifested his or her assent to those terms." *Id.* Here, Plaintiffs Schaffer and Ciampi each were provided reasonably conspicuous notice of the T&Cs and explicitly agreed to be bound by them by proceeding to place their orders.

Before Plaintiff Schaffer placed her order on FTD.com in 2020 and before Plaintiff Ciampi placed her order in 2022 on Proflowers.com, they were expressly notified that, "By clicking Place Your Order, you agree to our Privacy Policy and Terms of Use." Decl. ¶¶ 14–15, 19–20, Exs. 11, 15. This hyperlinked text was conspicuously located right beneath the "Place Your Order" button they had to click. On FTD.com, the link was in yellow color, setting it off from the rest of the text in black, while on Proflowers.com, the link became underlined when hovered over. Decl. Exs. 11, 15.

There can be no dispute that Plaintiffs Schaffer and Ciampi were subject to the T&Cs and the arbitration agreement therein, as it is well-settled that the type of disclosure they received is conspicuous enough such that continuing to place the order binds a consumer to the online agreement. Courts in this Circuit regularly enforce agreements presented in the same or even less conspicuous manner. For example, in *Domer*, the Seventh Circuit affirmed the district

10

court's enforcement of an online arbitration agreement where the website stated, at the bottom of the payment information page, that "By submitting your order you accept our Terms of Order," in "the same size and style font as the surrounding text."[6]  116 F.4th at 692.  Another court in this District very recently enforced an arbitration agreement where the website's checkout page included a disclosure of its terms of conditions that was nearly identical to the ones Plaintiffs Schaffer and Ciampi received here.  *See Hamera* v. *Best Buy Co., Inc.*, No. 24 C 11909, 2025 WL 1823994, at *1 (N.D. Ill. July 2, 2025) (compelling arbitration where the checkout page displayed the statement "By placing your order, you agree to our … Terms and Conditions" immediately above the "Place Your Order" button with a colored hyperlink to the terms); *see also Wilcosky* v. *Amazon.com, Inc.*, 517 F. Supp. 3d 751, 764–65 (N.D. Ill. 2021) (finding that plaintiffs were subject to Amazon's conditions of use when the notice "By placing your order, you agree to Amazon.com's <u>privacy notice</u> and <u>conditions of use</u>" was "located directly above or directly below the 'Place your order' button"); *Gorny* v. *Wayfair Inc.*, No. 18 C 8259, 2019 WL 2409595, at *5 (N.D. Ill. June 7, 2019) (finding that website provided sufficient notice where the checkout page contained a statement immediately below the order button that stated "By placing an order, you are agreeing to our <u>Privacy Policy</u> and <u>Terms of Use</u>").  Plaintiffs Schaffer and Ciampi, by proceeding to place their orders upon receiving the notice of the binding T&Cs, agreed to arbitrate

---

[6]    Although Wisconsin contract formation law applied in *Domer*, the elements there are similar to those under Illinois law.  The Seventh Circuit concluded in *Domer* that the "case 'calls for the application of general rules of contract formation, so the choice of law is not likely to affect the outcome.'"  *Domer*, 116 F.4th at 694 (citation omitted).

their claims.[7] *See Domer*, 116 F.4th at 699–700.

**B.**     **Plaintiffs Inoue, Pulbrook, and Vincenzi Also Agreed to Be Bound by the Terms and Conditions That Contained the Arbitration Clause**

When Plaintiffs Inoue, Pulbrook, and Vincenzi placed their orders on FTD.com, they were also put on notice of the T&Cs and agreed to be bound by them by continuing with the checkout process. For Plaintiffs Inoue and Pulbrook, at each step of their checkout process, a clear and distinct hyperlink to the "Terms and Conditions" was located directly beneath the action button they had to click in order to proceed. Decl. ¶¶ 16–17, Exs. 12, 13. The hyperlink was in contrasting black color to the light grey background and a user who clicked the action button would have easily seen that link. Decl. Exs. 12, 13. As for Plaintiff Vincenzi, the T&Cs were placed directly below the order information she needed to review in the mobile version before she proceeded to pay for her purchase. Decl. ¶ 18, Ex. 14. None of these Plaintiffs needed to scroll any extra to review the T&Cs—the T&Cs were visible and in close proximity to buttons to click or order information to review on an uncluttered webpage. If Plaintiffs were to click the hyperlink to view the full T&Cs, they would be immediately confronted with, in all capital letters and at the very top of the first page, a warning that "THESE TERMS AND CONDITIONS CONTAIN A BINDING ARBITRATION CLAUSE AND CLASS ACTION WAIVER . . . ." Decl. Ex. 6 at 1.

As set forth above, the hyperlink to the T&Cs was readily present at *each and every step* of Plaintiffs' checkout process on FTD.com. *See Hubbert* v. *Dell Corp.*, 359 Ill. App. 3d 976,

---

[7]    Plaintiff Schaffer received additional notice of the T&Cs when she placed another order in 2022 on FTD.com. When placing that order, she went through the same three-step checkout process that Plaintiffs Inoue and Pulbrook completed. *See infra* Section II(B). Plaintiff Ciampi received additional notices of the T&Cs during her later interactions with Proflowers.com as well. First, when she placed her orders on Proflowers.com in 2023 and 2024, she went through a three-step checkout process similar to the process Plaintiffs Inoue and Pulbrook went through when ordering on FTD.com, *see infra* II(B), and received similar notice of the T&C. Decl. ¶ 16–17, Exs. 12, 13. Second, she was expressly told she could "review" or "see" the T&Cs when she created her Proflowers account with the Gmail sign-on function in 2023. Decl. ¶ 22, Ex. 17.

984 (Ill. App. Ct. 2005) ("The blue hyperlinks on the defendant's Web pages, constituting the five-step process for ordering the computers, should be treated the same as a multipage written paper contract."); *Oberstein* v. *Live Nation Ent., Inc.*, 60 F.4th 505, 515–16 (9th Cir. 2023) (recognizing the user's repeated encounters with the terms as a factor weighing in favor of enforcement of the terms). Moreover, as the Seventh Circuit has explained, the formation of an online contract is an "objective" inquiry into "the law and the facts to see if *a reasonable person in [plaintiff's] shoes* would have realized that he was assenting to the [contract]," *Sgouros*, 817 F.3d at 1035 (emphasis added), and a reasonable consumer in plaintiff's shoes here is one who has *shopped repeatedly* on the Websites and lives in an age where online retail is an integral part of life: Plaintiff Pulbrook had repeatedly shopped on FTD.com (Decl. ¶ 16, Ex. 2); before Plaintiff Inoue placed her alleged order on FTD.com, she had made a purchase on Proflowers.com and had experience with a similar checkout process (Decl. Ex. 1); and discovery will show that Plaintiff Vincenzi also had prior experience shopping for flowers online. Therefore, where, as here, the website has repeatedly brought clearly labeled and hyperlinked T&Cs to a customer's attention during the checkout process, a reasonable person in Plaintiffs' shoes would know that the T&Cs are related to and apply to her transaction, regardless of whether there is additional language expressly informing her of such. *See Selden* v. *Airbnb, Inc.*, No. 16-CV-00933, 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016), *aff'd*, 4 F.4th 148 (D.C. Cir. 2021) ("The act of contracting for consumer services online is now commonplace in the American economy. *Any reasonably-active adult consumer will almost certainly appreciate that by signing up for a particular service, he or she is accepting the terms and conditions of the provider*." (emphasis added)).

The clear and distinct disclosure of the T&Cs hyperlink, the presence of the hyperlink on every webpage of the checkout process, and Plaintiffs' experience with the Websites

and online retail in general all counsel in favor of finding that Plaintiffs agreed to be bound by the T&Cs and distinguish the present case from precedent of this Circuit where the court declined to enforce an arbitration agreement. *Cf. Sgouros*, 817 F.3d at 1033–35 (finding that plaintiff did not agree to be bound by the terms where there was no statement that the purchase was subject to the terms, the terms were only presented once during checkout, and the website contained language misleading users). Therefore, the Court should find that Plaintiffs Inoue, Pulbrook, and Vincenzi agreed to arbitrate their claims.

## III. THE ARBITRATOR SHOULD DECIDE WHETHER PLAINTIFFS' CLAIMS FALL WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT

Assuming the Court finds that the arbitration agreement here is valid and enforceable against the Plaintiffs, it should then refer Plaintiffs' claims to arbitration. There can be no dispute that the T&Cs require that questions as to the scope of the arbitration agreement must be decided by an arbitrator. "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc.* v. *Archer & White Sales, Inc.*, 586 U.S. 63, 71 (2019). Here, the T&Cs provide that "the arbitration will be governed by the AAA's Consumer Arbitration Rules," (Decl. Ex. 6 at 3), and those rules in turn provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Consumer Arbitration Rules and Mediation Procedures R-14. Accordingly, just as this Court has held in *Ali* v. *Vehi-Ship, LLC*, No. 17 CV 02688, 2017 WL 5890876 (N.D. Ill. Nov. 27, 2017), "the incorporation by reference of the AAA Rules is clear and unmistakable evidence of [the parties'] intention to arbitrate arbitrability." *Id.* at *3.

14

## IV.    THE COURT SHOULD STAY THESE PROCEEDINGS

The Court should compel arbitration as to all Plaintiffs and stay these proceedings pursuant to the mandatory stay provision of the FAA.  *See* 9 U.S.C. § 3; *E.E.O.C.* v. *Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citing 9 U.S.C. §§ 3 and 4).  When a party requests a stay, "a district court must issue a stay (rather than dismiss a case)"  *Wallrich* v. *Samsung Elecs. Am., Inc.*, 106 F.4th 609, 617 (7th Cir. 2024) (citing *Smith* v. *Spizzirri*, 601 U.S. 472, 144 S. Ct. 1173, 1175 (2024)).  Because class action waivers are likewise lawful and enforceable, *AT&T Mobility LLC*, 563 U.S at 340, 348, 352, the Court should refer all Plaintiffs to individual arbitration.

Should the Court compel arbitration as to only a subset of the Plaintiffs, the Court should nonetheless stay the entirety of this litigation.  *See Volkswagen Of Am., Inc.* v. *Sud's Of Peoria, Inc.*, 474 F.3d 966, 973 (7th Cir. 2007).  Doing otherwise "risks 'inconsistent rulings' because the pending arbitration is 'likely to resolve issues material to [the] lawsuit.'"  *Id.* at 972 (citation omitted).  Where, as here, each plaintiff's claim arises from the exact same issue—i.e., FTD's disclosure of the delivery fee—"allowing one plaintiff's claims in arbitration to run parallel to the other's in litigation creates a substantial risk of inconsistent rulings" and a stay of the entire litigation must be granted.  *Angelilli* v. *Activision Blizzard, Inc.*, No. 23-CV-16566, 2025 WL 524276, at *18 (N.D. Ill. Feb. 18, 2025) (staying the litigation of one plaintiff's claim pending arbitration of the other plaintiff's claim when there was "substantial overlap in the factual and legal issues central to the claims of both Plaintiffs").

## CONCLUSION

For the foregoing reasons, the Court should grant FTD's motion to compel arbitration, refer all Plaintiffs' claims to individual arbitration, and stay these proceedings.

Dated: September 12, 2025
New York, NY

Respectfully Submitted,

By: _/s/ Robert Y. Sperling_

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Robert Y. Sperling (Bar No. 2688093)
Katherine B. Forrest (*pro hac vice*)
Staci Yablon (*pro hac vice*)
Xinshu Sui (*pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
rsperling@paulweiss.com
kforrest@paulweiss.com
syablon@paulweiss.com
xsui@paulweiss.com

*Attorneys for FTD, LLC.*

**<u>Certificate of Service</u>**

I hereby certify that on the 12th day of September, 2025, I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system, which will electronically serve all attorneys of record. I further certify that on the 12th day of September, 2025, I caused all exhibits filed under seal in connection with the foregoing to be served via electronic mail upon all counsel of record.

By: *<u>/s/ Robert Y. Sperling</u>*